No.03-823C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

THE ESTATE OF ROBERT PARDY,
by Susan Pardy, Executrix,

Plaintiff,

v.

The United States,

Defendant.

---

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

James C. Mehigan
MACLEAY LYNCH GREGG & LYNCH, P.C.
1629 K Street, N.W.
Suite 1150
Washington, DC 20006
(202) 785-0123
(202) 393-3390 (fax)

Counsel for Plaintiff

October 2, 2003

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iii

STATEMENT OF QUESTIONS PRESENTED .......... iv

STATEMENT OF THE CASE .......... 1

ARGUMENT .......... 4

I. STANDARD OF REVIEW .......... 4

II THE GRANT IS A CONTRACT FOR PURPOSES OF TUCKER ACT JURISDICTION .......... 5

III PLAINTIFF IS A THIRD-PARTY BENEFICIARY OF THE GRANT ... 9

CONCLUSION .......... 10

INDEX TO APPENDIX .......... 13

# TABLE OF AUTHORITIES

## STATUTES


28 U.S.C.A. § 1491 (2002) .......... 5


## FEDERAL CASES


Black v. United States,
56 Fed. Cl. 19 (2003) .......... 4

Carlow v. United States,
40 Fed. Cl. 773 (1998) .......... 4

City of El Centro v. United States,
922 F.2d 816, 820 (Fed. Cir. 1990) .......... 5

City of Manassas Park v. United States,
633 F.2d 181 (Ct. Cl. 1980) .......... 5

Conley v. Gibson,
355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) .......... 4

Guardsman Elevator Co. v. United States,
50 Fed. Cl. 577, 582 (2001) .......... 9

Nevin v. United States,
43 Fed. Cl. 151, 154 (1999) .......... 5

Pennsylvania Dept. of Public Welfare v. United States,
48 Fed. Cl. 785 (2001) .......... 5

Scheuer v. Rhodes,
416 U.S. 232, 236-7, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) .......... 4

State of Montana v. United States,
124 F.3d 1269 (Fed.Cir. 1997) .......... 5

Thermalon Indus., Ltd. v. United States,
34 Fed. Cl. 411 (1995) .......... 5

## STATEMENT OF THE QUESTIONS PRESENTED

I WHETHER GRANT ISSUED BY USAID TO THE WORLD BANK IS A CONTRACT FOR PURPOSES OF SUBJECT MATTER JURISDICTION UNDER THE TUCKER ACT.

II WHETHER ROBERT PARDY IS A THIRD-PARTY BENEFICIARY TO THE GRANT ISSUED BY USAID TO THE WORLD BANK.

THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE ESTATE OF ROBERT PARDY<br>By SUSAN PARDY, Executrix, | : | |
| | : | |
| Plaintiff, | | |
| | : | Case No. 03-823C |
| v. | | |
| | : | |
| THE UNITED STATES OF AMERICA, | | |
| | : | |
| Defendant. | : | |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, the Estate of Robert Pardy, by Susan Pardy, Executrix, through counsel hereby opposes Defendant's Motion to Dismiss, stating in support thereof the following:

STATEMENT OF THE CASE

1. The United States Agency for International Development (USAID) is a Federal Agency that was created to further American foreign policy interests in expanding democracy and free markets while improving the lives of citizens of the developing world through the administration of United States foreign assistance. See generally, http://www.usaid.gov/about_usaid/.

2. In furtherance of its foreign policy mission in the Republic of Georgia, USAID, through its Capital Markets Development Project helped establish the National Securities Commission (NSC), the regulatory agency that would oversee the newly formed securities market in the Republic of Georgia. See, Exhibit 1 at pp. 8-9 ¶ 4; See Also, Exhibit 2.

3. In September, 1999, the World Bank[1] presented a Proposal to USAID whereby USAID would fund the recruitment and retention of two (2) foreign country national commissioners to operate the NSC. See, Exhibit 1 at pp. 8-10.

4. The Proposal would require the World Bank to retain the Contractors, entailing:

- Reviewing the of Terms of Reference;
- Undertaking the advertising effort for the positions;
- Preparing a proposal for USAID trust funding;
- Establishing the World Bank's interview panel
- Interviewing Candidates (in Washington DC);
- Communicating to the Government the short listed candidates with detailed interview reports; and
- Administering the (country-executed) Trust Fund and contracting the two selected candidates.

See, Exhibit 1 at p.10.

5. In furtherance of its foreign policy mission in the Republic of Georgia, USAID adopted the World Bank's Proposal and incorporated it into an offer of Grant whereby USAID, under the authority of the Foreign Assistance Act of 1961, as amended, would provide funds pursuant to the Proposal. See, Exhibit 1 at p.1.

6. The offer of Grant was made on behalf of USAID by Michael Farbman. At the time Mr. Farbman was employed by USAID as a Grant Officer who, upon information and belief, had actual authority to bind USAID in contract. See, Exhibit 1 at p.1.

[1]Upon information and belief, the World Bank is an institution comprised of a number of entities including the International Bank of Reconstruction and Development (IDRB) and the International Development Association (IDA).

7. The Grant was ratified and agreed to by USAID and the World Bank. See, Exhibit 1 at pp. 21-2.

8. Accepting the terms of this Grant, the World Bank performed its obligations under the Grant. The World Bank advertized the position of Commissioner in The Economist magazine. See, Exhibit 3 at ¶ 1. The World Bank (along with USAID staff) interviewed candidates for the position, including Robert Pardy, by telephone from Washington, DC and in person in the Republic of Georgia. See, Exhibit 3 at ¶ 4. The World Bank selected Robert Pardy out of one hundred candidates. See, Exhibit 3 at ¶ 4. The World Bank negotiated the terms of consulting services with Robert Pardy by telephone in Washington, DC and in person in the Republic of Georgia. See, Exhibit 3 at ¶ 5. Moreover, The World Bank drafted the consulting services agreement. See, Exhibit 3 at ¶ 6.

9. In further consideration of the Grant, The World Bank agreed to contribute, and did in fact contribute, one hundred forty thousand dollars ($140,000.00) of its own money to fund the Securities Commissioner's employment. See, Exhibit 1 at pp. 16-7.

10. Pursuant to the Grant, the World Bank would pay Robert Pardy Seven Hundred Twenty-Seven Thousand Dollars ($727,000.00) for his consulting services. See, Exhibit 3 at ¶ 7.

11. Relying upon the World Bank's assertions, Robert Pardy accepted the position as Commissioner of the National Securities Commission of Georgia. See, Exhibit 3 at ¶ 10.

12. On October 12, 2000, while working in his new capacity as Commissioner of the National Securities Commission of Georgia, Mr. Pardy was struck by a hit-and-run driver and died hours later in a hospital in Georgia. See, Exhibit 3 at ¶ 11.

13. Prior to his death, Robert Pardy was paid two hundred sixty-one thousand seven

hundred twenty Dollars ($261,720.00) in partial performance of the for his services. The outstanding balance owed to Robert Pardy's estate is Four Hundred Sixty-Five Thousand Two Hundred Eighty U.S. Dollars ($465,280.00). See, Exhibit 3 at ¶ 14.

14. The morning after Robert Pardy's death, USAID staff member James Watson and World Bank staff member Cheryl Martin reiterated to Robert Pardy's wife and estate executrix, Mrs. Susan Pardy the obligation remaining to Mr. Pardy in the amount of Four Hundred Sixty-Five Thousand Two Hundred Eighty U.S. Dollars ($465,280.00) would be paid in full to Mr. Pardy's estate. See, Exhibit 3 ¶ 13.

15. Only after Mrs. Pardy returned home to Australia did USAID unilaterally revoke its obligation to pay the balance owed to Mr. Pardy's Estate. See, Defendant's Motion to Dismiss, Attachments C, D, & E.

## ARGUMENT

### I. Standard of Review

In considering a Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim the Court "must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the Plaintiff." Black v. United States, 56 Fed. Cl. 19 (2003) (citing Scheuer v. Rhodes, 416 U.S. 232, 236-7, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). See Also, Carlow v. United States, 40 Fed. Cl. 773 (1998). Moreover, "[t]he court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Carlow, at 778 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)) (internal quotations omitted).

II The Grant Is A Contract For Purposes of Tucker Act Jurisdiction

The Tucker Act, grants this Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C.A. § 1491 (2002). Furthermore, in order "[t]o prove the existence of an express or implied contract with the government for purposes of this court's jurisdiction, proof of four elements is required: 1) lack of ambiguity in offer and acceptance; 2) mutuality of intent to contract; 3) sufficient conduct by a government representative having actual authority to bind the government in contract; and 4) consideration." Nevin v. United States, 43 Fed. Cl. 151, 154 (1999) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230, 115 L. Ed. 2d 1019, 111 S. Ct. 2851 (1991)). Moreover, obligations undertaken by the government pursuant to a grant may be deemed a contract under the Tucker Act provided the grant meets the four elements of an express or implied contract with the government. See, Pennsylvania Dept. of Public Welfare v. United States, 48 Fed. Cl. 785 (2001) (citing as examples City of Manassas Park v. United States, 633 F.2d 181 (Ct. Cl. 1980); Thermalon Indus., Ltd. v. United States, 34 Fed. Cl. 411 (1995); *et. al.*).

In Thermalon, the government solicited proposals from small business firms for scientific research projects that could lead to public benefit. Plaintiff submitted a proposal under this program, which the government accepted and issued a grant. Plaintiff commenced performance on the project, and subsequently the government withdrew its grant and refused to pay Plaintiff. The Court held that the grant was a contract for purposes of Tucker Act Jurisdiction concluding:

> that plaintiff has demonstrated the presence of the required elements of a binding contract with the United States. Defendant does not contend that the government agents involved lacked contracting authority, and the material presented by the parties reveals an offer, an acceptance, and consideration. As to the offer and acceptance, NSF solicited proposals from small business firms... plaintiff submitted an offer in response, and NSF in turn issued an award.
>
> * * * * * * * * * *
>
> As to consideration, the terms of the offer and acceptance, which are contained in the solicitation, the "Grant General Conditions," and the other terms and conditions specified by NSF in the award, provide for the passage of consideration between the parties.

Id. at 414-5.

Similarly, here the Grant meets all four of these elements of an express or implied contract with the government.

1. *Lack of Ambiguity In Offer And Acceptence*

There is no ambiguity in USAID's offer of the Grant. USAID's Grant Officer Michael Farbman extended the offer to the World Bank on September 24, 1999, writing,

> Pursuant to the authority contained in the Foreign Assistance Act of 1961, as amended, the U.S. Agency for International Development (USAID) hereby grants to International Bank for Reconstruction and Development (IBRD) and International Development Association (IDA) (herein after referred to as "Grantee"), the sum of seven hundred fifty-seven thousand eight hundred dollars ($757,800.00) to provide support for a program in Georgia as described in the Schedule of this grant and in Attachment 1, entitled "Program Description." USAID grants an additional $505,860.00, increasing the total of this grant to $1,263,660.00, to provide support for the program in Georgia described in the Schedule and Program Description of the grant, as amended.

Exhibit 1 at p. 1. The language of Mr. Farbman's letter clearly articulates an offer to grant the

World Bank funds in support of the program proposed by the World Bank.

Furthermore, the World Bank by its actions, clearly accepted USAID's offer. First, the World Bank drafted the Proposal for the Grant which USAID adopted and incorporated into the Grant. See, Exhibit 1 at pp. 8-10. Additionally, upon receipt of the Grant offer, the World Bank immediately began carrying out its obligations under the Grant. The World Bank advertized the position of Commissioner in The Economist magazine. See, Exhibit 3 at ¶ 1. The World Bank interviewed Robert Pardy and over one hundred other candidates for the position. See, Exhibit 3 at ¶ 4. The World Bank even hammered out the terms of consulting services with Robert Pardy and drafted the consulting services agreement. See, Exhibit 3 at ¶¶ 5 & 6. Accordingly, the World Bank, by its actions in response to the issuance of the Grant clearly accepted USAID's offer. Thus the first element of a contract is met.

2. *Mutuality of Intent to Contract*

The mutuality of intent to enter into contract is clearly evidenced by the actions of both USAID and the World Bank. As previously addressed, the World Bank approached USAID with the Proposal For Funding By USAID. See, Exhibit 1 at pp. 8-10. The intent of the World Bank was to secure an obligation by USAID to provide funds to retain foreign country commissioners to run the NSC. See, Exhibit 1 at 8-10. By offering the Proposal, the World Bank clearly intended to obligate itself with the responsibilities detailed in the proposal, which included finding and retaining the Commissioners to head the NSC. USAID adopted the World Bank's Proposal as written, and incorporated it into its offer of Grant. See, Exhibit 1 8-10. By accepting the Proposal, and by offering the Grant in response to the Proposal, USAID clearly intended to obligate itself to provide funds pursuant to that Proposal. Thus by accepting the obligations

detailed in the Grant, it is clear that both the World Bank and USAID mutually intended to enter into the Grant agreement. Thus the second element of a contract is met.

3. *Sufficient Conduct By A Government Representative With Authority to Bind Government*

The issuance of the Grant clearly manifests *prima facie* evidence of sufficient conduct by a representative with authority to bind USAID. The Grant was issued by USAID Grant Officer Michael Farbman under the authority of the Foreign Assistance Act of 1961, as amended. See, Exhibit 1 at p. 1. Furthermore, upon issuance of the Grant, USAID commenced performance on the Grant, making payments as required under the Grant. Finally, in its Motion to Dismiss, Defendant does not deny that the Grant was issued, or that Michael Farbman had authority to bind the government. Thus the third element of a contract is met.

4. *Consideration*

As in Thermalon, the terms of the Grant in this matter provide for the passage of consideration between the parties. USAID issued the Grant on the condition that the World Bank conformed with the Grant's terms and conditions. See, Exhibit 1 at p. 1. Furthermore, in addition to fulfilling its obligations under the Grant (interviewing and retaining commissioners, etc.), the World Bank was also obligated to contribute one hundred forty thousand dollars ($140,000.00) of its own money to fund the project. See, Exhibit 1 at p. 16-7. Finally, USAID, in consideration of the World Bank's obligations under the Grant, USAID obligated itself to fund the project provided the conditions of the Grant were met. Thus the fourth element of a contract is met.

Accordingly, because the Grant meets all four requirements of a contract, this Court has subject matter jurisdiction over this matter under the Tucker Act.

III Robert Pardy Is A Third-Party Beneficiary of The Grant

As an intended beneficiary of the Grant, Robert Pardy is third-party beneficiary of the Grant. Under Federal common law, "[a] party is a third-party beneficiary of a contract with the Government if that contract reflects the express or implied intention of the parties to benefit the third-party." Guardsman Elevator Co. v. United States, 50 Fed. Cl. 577, 582 (2001) (citing State of Mont. v. United States, 124 F.3d 1269 (Fed.Cir. 1997)) (internal quotes omitted). Furthermore, "[t]he intended beneficiary need not be specifically identified in the contract, but must fall within a class clearly intended to be the benefited thereby." State of Montana, 124 F.3d at 1273. See also, Carlow v. United States, 40 Fed. Cl. 773 (1998).

In Carlow, the government through the Bureau of Indian Affairs (BIA) entered into a self-determination contract with the Olglala Sioux Tribe of Pine Ridge Indian Reservation (the Tribe) pursuant to 25 U.S.C. §§ 450 *et. seq.* to fund a road construction project. The Tribe retained Plaintiff to provide labor and heavy equipment for the project. After the project commenced, the Tribe experienced difficulties fulfilling its responsibilities under the self-determination contract. The Tribe then canceled the self-determination contract and refused to pay Plaintiff for his services. Plaintiff initiated suit against BIA under a third-party contract theory. The Court held, that although not specifically mentioned in the self-determination contract, "the plaintiffs and those similarly situated were intended beneficiaries of the self-determination contract." Carlow v. United States, 40 Fed. Cl. at 783. The Court further found that the self-determination contract placed "plaintiffs within the accepted parameters of intended third-party beneficiary law." Id.

Similarly in Guardsman Elevator, the Court also found Plaintiff to be within the parameters of third-party beneficiary law. There, the government, through the Department of Housing and Urban Development (HUD), provided housing assistance to a housing project in Brooklyn, New York. Plaintiff, an elevator service company provided services to the housing project. Subsequently the housing project was placed in receivership amid charges of corruption, and HUD eventually received possession of the project pursuant to a stipulation agreement with the receiver. Under the stipulation, HUD agreed to pay all pre-receivership payables. Plaintiff then sued HUD as a third-party beneficiary of the stipulation agreement. The Court found that for purposes of establishing Tucker Act jurisdiction, Plaintiff met its burden of showing that it was a pre-receivership payable under the stipulation agreement as intended by the parties, and as such was entitled to assert a claim for recovery under the Tucker Act as a third-party beneficiary. See, Id. at 581.

Here, like the Plaintiffs in Carlow and Guardsman Elevator, Robert Pardy is also entitled to Tucker Act jurisdiction as a third-party beneficiary to a government contract. The purpose of the Grant was to fund two foreign country nationals to head the NSC. See, Exhibit 1 at pp. 8-10. As required under the Grant, the World Bank advertized the position, interviewed candidates, and selected Robert Pardy as one of the two foreign country nationals to head the NSC. See, Exhibit 3 at ¶ 4. Accordingly, as one of the selected commissioners that the Grant intended to benefit, Robert Pardy is inside the parameters of intended third-party beneficiary law.

## CONCLUSION

Accordingly, because the Grant issued by USAID to the World Bank is a contract under the Tucker Act, and because Robert Pardy is a Third-Party beneficiary to the Grant, Defendant's

Motion to Diss must be denied.

WHEREFORE, Plaintiff the Estate of Robert Pardy, by Susan Pardy, Executrix, requests this honorable Court to deny Defendant's Motion to Dismiss.

Respectfully submitted,

__________________________________

James C. Mehigan
MACLEAY LYNCH GREGG & LYNCH, P.C.
1629 K Street, N.W.
Suite 1150
Washington, DC 20006
(202) 785-0123
(202) 393-3390 (fax)

October 2, 2003

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was mailed, first-class, postage prepaid, this 2nd day of October, 2003, to:

Brent McBurney, Esquire
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Room 12074
Washington, DC 20005

______________________________
James C. Mehigan

INDEX TO APPENDIX

| | | |
|---|---|---|
| EXHIBIT 1 | GRANT | (BATE STAMPED 1 - 23) |
| EXHIBIT 2 | USAID PRESS RELEASE, 2000 | |
| EXHIBIT 3 | COMPLAINT (WITHOUT ATTACHMENTS) | |